UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMAS O'CAMPO,<br><br>    Plaintiff,<br><br>    v.<br><br>GOLDEN BEAR RESTAURANT GROUP, INC., et al.,<br><br>    Defendants. | No. 2:15-cv-01849-TLN-DMC<br><br>**MEMORANDUM AND ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Plaintiff Dimas O'Campo's ("Plaintiff") Motion for Partial Summary Judgment (ECF No. 18) and Defendants Golden Bear Restaurant Group, Inc., Joseph Polati, and Traci Polati's (collectively, "Defendants") Motion for Summary Judgment (ECF No. 17). Defendants oppose Plaintiff's Motion for Partial Summary Judgment (ECF No. 19) and Plaintiff filed a reply (ECF No. 23). Plaintiff opposes Defendants' Motion for Summary Judgment (ECF No. 20) and Defendants filed a reply (ECF No. 22). For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

///

///

///

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

Plaintiff has severe brain damage, which affects his ability to walk, talk, see, and stand. (ECF No. 22-1 ¶ 1.) Plaintiff requires the use of a cane and/or wheelchair, and often a mobility equipped vehicle when traveling in public. (ECF No. 22-1 ¶ 2.) Plaintiff visited the Arby's Restaurant ("the Restaurant") at issue multiple times, including visits on June 17, 2015, and August 11, 2015. (ECF No. 18-9 ¶ 2.) While at the Restaurant, Plaintiff alleges he encountered multiple barriers including: (1) a steep slope in the disabled parking space; (2) a steep slope in the access aisle in the parking lot; (3) an International Symbol of Accessibility ("ISA") sign at the entrance door that was not the correct height; (4) an entrance door with an inaccessible "panel" handle; (5) a toilet tissue dispenser in the restroom mounted too far from the front of the toilet; (6) pipes beneath the sink in the restroom which were improperly and incompletely wrapped; (7) a mirror in the restroom which was mounted too high; (8) a soap dispenser in the restroom which was mounted too high; and (9) a paper towel dispenser which required twisting, pinching, and/or grasping and was difficult to use. (ECF No. 22-1 at 3.)

Plaintiff concedes that Defendants have remediated five access barriers, rendering them moot. (ECF No. 18-1 at 11.) The five remediated access barriers include: (1) the ISA sign at the entrance door that was not posted at the correct height; (2) the entrance door with an inaccessible "panel" handle; (3) the mirror in the restroom which was mounted too high; (4) the soap dispenser in the restroom which was mounted too high; and (5) the paper towel dispenser which required twisting, pinching, and/or grabbing and was difficult to use. (ECF No. 18-1 at 11.) Plaintiff states that the remaining barriers violate both the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and Title 24 of the California Building Code ("CBC"). (ECF No. 4 ¶ 14.) Together, the ADAAG and the CBC govern the requirements for new and existing construction under the ADA.[1] (ECF No. 17-6 at 2–4.) Plaintiff asserts that at least one

---

[1] The ADAAG lays out the technical requirements regarding whether a building meets the ADA's "readily accessible" standard. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Title 24 of the CBC provides the technical accessibility requirements under California law. *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011). Thus, a violation of the CBC constitutes a violation of the Unruh Act and the California Disabled Persons Act. *Id.*

of the Restaurant's disabled parking spaces has slopes and/or cross slopes that are too steep, which makes it difficult for him to exit a vehicle. (ECF No. 4 ¶ 10.) Plaintiff states that the Restaurant's access aisle has slopes and/or cross slopes that are too steep, due to an encroaching built-up curb ramp, which makes it difficult for him to unload or transfer from his wheelchair into a vehicle. (ECF No. 4 ¶ 10.) Further, Plaintiff alleges that the toilet tissue dispenser is mounted too far from the front of the water closet and that the pipes beneath the sink are improperly and incompletely wrapped, which causes a risk that Plaintiff will burn his legs while washing his hands. (ECF No. 4 ¶ 10.) Due to these barriers, Plaintiff alleges he is prevented from enjoying full and equal access to the Restaurant. (ECF No. 4 ¶ 10.)

Defendants retained the services of Certified Access Specialist Kim Blackseth. (ECF No. 17-5 at 1–2.) On June 12, 2017, Blackseth performed a site inspection at the Restaurant and submitted a report ("Blackseth report") of his findings to Defendants. (ECF No. 17-5 at 2–3.) Blackseth opined that: (1) there is no built-up curb ramp within the access aisle because the curb ramp is located in front of the access aisle; (2) the toilet tissue dispenser is 7"–9" in front of the toilet in the restroom; (3) the lavatory drain and supply pipes in the restroom are insulated; and (4) the base of the access aisle has a slope in the direction of travel of 4.1%. (ECF No. 17-5 at 3; ECF No. 17-6 at 8.) Blackseth recommended Defendants modify the access aisle and parking stalls to provide a slope of 2% maximum. (ECF No. 17-6 at 8.) Following the Blackseth report, Defendant Golden Bear Restaurant Group, Inc.'s President, Nigel Nary hired a grading contractor to resurface the disabled parking area to a new slope of 2% or less. (ECF No. 17-3 at 2.) Nary received an invoice for the construction on August 26, 2017, and the work was completed by September 11, 2017. (ECF No. 22 at 8.)

Defendants confirmed with Plaintiff's counsel that the barriers had been remodeled and removed in early October 2017. (ECF No. 20-2 ¶ 3.) Plaintiff's counsel, Stephanie Ross visited the Restaurant to determine whether this was true. (ECF No. 20-2 ¶ 4.) Ross utilized a digital level and tape measure to measure the slope of the disabled parking spaces, the slope of the access aisles, and the distance from the edge of the water closet to centerline of the toilet paper dispenser. (ECF No. 20-2 ¶¶ 5–12.) She took pictures of these measurements and observations,

including the pipes beneath the lavatories, and submitted this evidence in the form of a declaration. (*See* ECF Nos. 20-2 & 20-3.)

B. Procedural Background

On September 9, 2015, Plaintiff filed a First Amended Complaint ("FAC") alleging Defendants violated the Americans with Disabilities Act of 1990 ("ADA"), California's Unruh Civil Rights Act, and California's Disabled Persons Act. (ECF No. 4.) Moreover, Plaintiff's FAC alleged Defendants violated Part 5.5 of the California Health and Safety Code (§§ 19955 et seq.) and/or California Government Code § 4450 thereby denying Plaintiff full and equal access to public facilities. (ECF No. 4 at 10.) Plaintiff requested injunctive relief, declaratory relief stating that Defendants violated the ADA for the purposes of California's Unruh Act or Disabled Persons Act damages, statutory damages, attorney's fees and costs, and prejudgment interest. (ECF No. 4 at 11.)

On October 19, 2017, Defendants moved for summary judgment arguing that summary judgment is proper because "no barriers exist." (ECF No. 17-1 at 4.) On the same day, Plaintiff filed a motion for partial summary judgment arguing that summary judgment is proper because "there are barriers to access [the Restaurant] and [Plaintiff] encountered them." (ECF No. 18-1 at 2.)

**II.  STANDARD OF LAW**

A.  Summary Judgment

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

4

solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

B. <u>Americans With Disabilities Act</u>

"To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010); *see generally* 42 U.S.C. § 12182(a) (setting forth the ADA's general rule).

Satisfying the first element of a disability discrimination claim under the ADA requires proof that a plaintiff suffers from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Walking is one of the major life activities defined by the ADA. *Id.* § 12102(2)(A). The second element of an ADA disability discrimination claim is met if the defendant is a "sales or rental establishment," because such an establishment qualifies as a public accommodation subject to the ADA. *Id.* § 12181(7)(E).

To satisfy the third element of a disability discrimination claim, a plaintiff may demonstrate that the facility in question contains barriers whose removal is readily achievable but have not been removed. *Id.* § 12182(b)(2)(A)(iv). Therefore, a plaintiff may meet its burden to demonstrate denial of a public accommodation due to disability by submitting evidence that the facility in question violates applicable accessibility standards. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945–47 (9th Cir. 2011) (en banc).

*i.    Injunctive Relief*

Where a defendant's ADA violations are predicated on barriers to accessibility and removal of those barriers is readily achievable pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv),

"injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2).

### C. California's Unruh Civil Rights Act

Any "violation of the right of any individual under the [ADA] shall also constitute a violation of" California's Unruh Civil Rights Act. Cal. Civ. Code § 51(f). Each violation of the Unruh Civil Rights Act carries with it a minimum of $4,000 in damages. *Id.* §§ 52(a), 55.56(f). These statutorily mandated damages may be recovered against the owners of a place of public accommodation "only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." *Id.* § 55.56(a).

Demonstrating that a plaintiff was denied the full and equal access necessary to trigger an award of statutory damages requires a showing that "the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." *Id.* § 55.56(b); *see also id.* § 55.56(c) ("A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation.").

### III. ANALYSIS

"To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard*, 603 F.3d at 670; *see generally* 42 U.S.C. § 12182(a) (setting forth the ADA's general rule).

It is undisputed that Plaintiff is disabled within the meaning of the ADA because he has severe brain damage which affects his ability to walk, talk, see, and stand. (ECF No. 17-2 ¶ 2; ECF No. 18-9 ¶ 1.) Thus, Plaintiff has established that "he is disabled within the meaning of the ADA." *Arizona ex rel. Goddard*, 603 F.3d at 670. Moreover, there is no genuine dispute of material fact that Defendants own, operate, and/or lease a place of public accommodation — the Restaurant. (ECF No. 18-1 at 5.) Accordingly, the Court will address whether Plaintiff was

denied a public accommodation due to his disability.

        A.        <u>Witness Objections</u>

                *i.*        *Declaration of Stephanie Ross*

In both its moving papers and opposition to Plaintiff's motion for partial summary judgment, Defendants argue the Court should not consider Ross's declaration of her observations and findings during her October 16, 2017 visit to the Restaurant. (ECF No. 19 at 4–7 and ECF No. 22 at 5–7.) Defendants argue that because Plaintiff did not disclose Ross as a witness pursuant to Federal Rules of Civil Procedure ("FRCP") 26(a)(1)(A), Plaintiff cannot use her declaration per FRCP 37(c). (ECF No. 19 at 4.) Defendants further argue that Ross is offering an expert opinion, which she is not qualified to do under Federal Rules of Evidence 702. (ECF No. 19 at 4.) Plaintiff does not respond to either argument.

FRCP Rule 26 requires parties to a litigation to disclose "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." FRCP 26(a)(1)(A)(i). A party who fails to disclose witnesses under Rule 26(a) may not "use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FRCP 37(c)(1).

As Plaintiff's lawyer, Ross had a duty to properly prepare Plaintiff's case and diligently investigate the allegations. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Proper preparation of a client's case demands that [s]he assemble information, sift what [s]he considers to be the relevant from the irrelevant facts, [and] prepare h[er] legal theories . . . ."). Generally, "[a]n attorney's work product is the product of h[er] effort, research and thoughts in the preparation of the client's case." *Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp. 3d 1009, 1013 (N.D. Cal. 2014) (quoting *Hawker v. BancInsurance, Inc.*, No. 1:12-CV-01261-SAB, 2013 WL 6843088, at *6 (E.D. Cal. Dec. 27, 2013)). Work product includes "the results of h[er] own work . . . in investigating both the favorable and unfavorable aspects of the case." *Id.* (quoting *2,022 Ranch v. Superior Court*, 113 Cal. App. 4th 1377, 1389 (2003)). Here, Ross's observations, photographs, and measurements constitute work product because they were compiled during her investigation of her client's case. *See id.* (stating that work product is

information assembled in the form of "statements, memoranda, correspondence, briefs, and any other writings reflecting the attorney's impressions, conclusions, opinions, or legal research"). Therefore, Plaintiff was not required to disclose his own attorney as a witness pursuant to FRCP Rule 26 because "the declaration at issue was clearly work product right up until the moment it was filed." *Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001) (finding FRCP 26(a) does not "expressly require disclosure of work product").

Finally, the Court declines to find Ross was acting as an expert witness when she utilized the digital level and measuring tape to prepare her report. "Lay witness testimony generally summarizes first-hand sensory observations and 'is not to provide specialized explanations or observations that an untrained layman could not if perceiving the same acts or events.'" *Vanderbusch v. Chokatos*, 2018 WL 4382201, at *6 (E.D. Cal. Sept. 13, 2018), *adopted by Vanderbusch v. Chokatos*, No. 1:13-CV-01422-LJO-EPG (PC), 2018 WL 4698305 (E.D. Cal. Sept. 28, 2018) (quoting *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002)). Lay witness testimony is distinct from expert testimony because "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Hanger Prosthetics & Orthopedics, Inc. v. Capstone, Orthopedic, Inc.*, No. 2:06-cv-02879-GEB-KJM, 2008 WL 2441067, at *2 (E.D. Cal. June 13, 2008). Utilizing a digital level and tape measure does not render Ross an expert because it does not require any "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 701(c). Instead, Ross used common tool devices that people use in their everyday life; these tools are not such that their use can "be mastered only by specialists in the field." *Hanger Prosthetics & Orthopedics, Inc.*, 2018 WL 2441067, at *2. Therefore, the Court rejects Defendants' argument that Ross offered an expert opinion by submitting her declaration. (ECF No. 19 at 4.)

### ii. Kim Blackseth

Plaintiff opposes the introduction of Blackseth's report arguing that "Defendants failed to timely designate [him as] an expert in this matter." (ECF No. 20 at 4.) Defendants argue that Blackseth was designated pursuant to the Pretrial Scheduling Order as a supplemental/rebuttal

expert. (ECF No. 22 at 3–4.)

The Pretrial Scheduling Order required the parties to submit their expert witness lists by June 1, 2017, and designate a "supplemental list of expert witnesses who will express an opinion on a subject covered by an expert designated by an adverse party" by June 21, 2017. (ECF No. 10 at 2.) On June 21, 2017, Defendants designated Blackseth as a supplemental/rebuttal expert and attached his report, which rebutted the allegations in Plaintiff's FAC. (ECF No. 22 at 4; ECF No. 14.) Plaintiff argues Blackseth's report is "overbroad and presents evidence beyond mere rebuttal." (ECF No. 20 at 5.) Blackseth's report was submitted in response to Plaintiff's expert witness Joe Paul Card's 103-page report (ECF No. 12-1). Card's report contains photographs, measurements, and observations of the different defects Plaintiff alleges in his FAC, along with the applicable standards and requirements under the ADAAG. (ECF No. 12-1.) Blackseth's report contains similar findings; it focuses solely on the nine barriers Plaintiff alleges in his FAC and makes recommendations to Defendants regarding compliance. (ECF No. 17-6 at 2–14.) After examining Blackseth's report, the Court finds the report solely addresses Plaintiff's allegations in the FAC and does not refer to any information outside the subject matter of Card's report. Therefore, the Court will consider Blackseth's report.

### B. Denial of Public Accommodation Due to Disability

#### i. Disabled Parking Spaces

Plaintiff moves for partial summary judgment arguing it is undisputed that as of October 16, 2017, the disabled parking slopes at the restaurant contained slopes that were as steep as 2.7% in violation of the ADAAG. (ECF No. 18-1 at 6.) Defendants move for summary judgment arguing it is undisputed that the slope of the disabled parking spaces does not exceed 2% and is compliant with both the ADAAG and the CBC. (ECF No. 17-1 at 4.)

Under the 1991 ADAAG, "[v]ehicle standing spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." ADAAG § 4.6.6 (1991). The 2010 ADAAG does not permit slopes steeper than 1:48 or 2.08%. ADAAG § 502.4 (2010). The CBC also mandates that "[t]he maximum cross slope in any direction of an accessible parking space and adjacent access aisle shall not exceed 2%." CBC § 1129B.3.

To support its contention that Defendants' disabled parking space has a slope that violates both the ADAAG and the CBC, Plaintiff relies on Ross's declaration. According to her declaration, she measured and observed that the disabled parking spaces had slopes and/or cross slopes of 2.2% and 2.7%. (ECF No. 20-2 ¶ 9.) Ross submits photographs of the parking spaces that show these differing slopes. (ECF No. 20-3 at 11–18.) Defendants dispute Ross's findings for two reasons. First, Defendants argue that the Court should not consider Ross's declaration because she was not disclosed as a witness. (ECF No. 19 at 4.) The Court has already addressed this argument and will consider the declaration. Second, Defendants argue their own Certified Access Specialist, Blackseth, concluded that the slope of the disabled parking spaces does not exceed 2%. (ECF No. 19 at 4.) To support this contention, Defendants also provide a copy of the invoice between Nary and a grading contractor to resurface the disabled parking area to contain a slope no greater than 2%. (ECF No. 17-4 at 2.) Because a dispute exists regarding whether any portion of the parking spaces currently exceed 2%, neither Plaintiff nor Defendants are entitled to summary judgment on this issue. *See Sharp v. Balboa Islands LLC*, 900 F. Supp. 2d 1084, 1092 (S.D. Cal. 2012) (denying summary adjudication after Plaintiff and Defendants submitted conflicting reports regarding the slope of the disabled parking spaces). Therefore, the Court DENIES both Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment on whether the disabled parking spaces comply with the ADAAG and CBC slope requirements.

        *ii.*  *Access Aisles in the Parking Lot*

Both Plaintiff and Defendants move for summary judgment on whether the slope of the access aisle in the parking lot exceeds 2% and complies with the ADAAG and CBC. (ECF No. 17-1 at 4; ECF No. 18-1 at 7–9.) Defendant argues that the slope of the access aisle does not exceed 2% and there is no built-up curb ramp within the access aisle. (ECF No. 17-1 at 4.) Plaintiff argues the access aisles have slopes and/or cross slopes in excess of 2%. (ECF No. 18-1 at 7.)

ADAAG section 502.4 provides, "[a]cess aisles shall be at the same level as the parking spaces they serve" and "[s]lopes not steeper than 1:48 [2.08%] shall be permitted." ADAAG §

502.4 (2010). The CBC provides, "[r]amps shall not encroach into any accessible parking space of the adjacent access aisle. The maximum cross slope in any direction of an accessible parking space and adjacent aisle shall not exceed 2%." CBC § 1129B.3.

Plaintiff relies on Ross's declaration, where she observed that the access aisle had slopes and/or cross slopes of 2.7% and 3.2%. (ECF No. 20-2 ¶ 10.) She submits photographs showing these slopes. (ECF No. 20-3 at 11–18.) Defendants dispute this evidence and argue the access aisle does not have a slope that exceeds 2%. (ECF No. 19 at 5.) To dispute Plaintiff's allegation that the access aisle is too steep mainly due to an encroaching built-up curb ramp, Defendants rely on Blackseth's findings, which opined that there is no built-up curb ramp within the access aisle because it is located in front of the access aisle. (ECF No. 19 at 5.) The conflicting evidence shows a dispute of material fact exists regarding the slope of the access aisle, therefore, summary judgment is inappropriate. Thus, the Court DENIES Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment on whether the access aisle complies with the ADAAG and CBC slope requirements.

### iii. Toilet Tissue Dispenser in the Restroom

Plaintiff and Defendants each move for summary judgment on whether the toilet tissue dispenser in the restroom complies with the ADAAG. (ECF No. 17-1 at 6; ECF No. 18-1 at 9.) Plaintiff argues the toilet tissue dispenser does not comply because it is mounted too far from the front of the water closet. (ECF No. 18-1 at 9.) Defendants argue the distance between the toilet tissue dispenser and the water closet fully complies will all applicable accessibility laws. (ECF No. 17-1 at 6.)

The ADAAG requires that "[t]oilet paper dispensers . . . shall be 7 inches (180 mm) minimum and 9 inches (230 mm) maximum in front of the water closet measured to the centerline of the dispenser." ADAAG § 604.7 (2010). Pursuant to CBC section 1115B.9.3, "[t]oilet tissue dispensers shall be located on the wall within 12 inches (305 mm) of the front edge of the toilet seat." CBC § 1115B.8.4.

Plaintiff argues the toilet tissue dispenser violates the applicable accessibility laws because the dispenser holds two rolls horizontally. (ECF No. 18-1 at 9.) Plaintiff states that

12

"because of its horizontal side by side nature, the dispenser will never be able to dispense toilet paper in compliance with the ADA Standards. . . ." (ECF No. 18-1 at 9.) Plaintiff further argues that, although the centerline of the roll nearest the water closet may comply, the roll situated horizontally next to it, does not because it exceeds the maximum distance. (ECF No. 18-1 at 9.) Plaintiff cites to Ross's declaration, where she measured the distance between the edge of the water closet and the centerline of the toilet paper roll. (ECF No. 20-2 ¶ 12.) Ross's measurements showed that the centerline of the first toilet paper roll in one of the restrooms was 8 inches from the edge of the water closet, and the second roll's centerline was 13 inches away the centerline of the first toilet paper roll. (ECF No. 20-2 ¶ 12.) Plaintiff also points out the measurements in the Restaurant's second restroom, showing the centerline of the first toilet paper roll in one was 6 inches from the edge of the water closet and the centerline of the second roll was 12 inches away. (ECF No. 20-2 ¶ 12.)

Defendants makes two arguments. First, Defendants argue that Plaintiff's reference to, and Ross's measurements of, a second bathroom is improper because the FAC only alleged violation of a "single toilet paper dispenser." (ECF No. 19 at 6–7.) Defendants state that when Plaintiff initially visited the Restaurant, the visit which prompted this lawsuit, the Restaurant had two restrooms: one for men and one for women. (ECF No. 22 at 9.) This fact is also evidenced by Plaintiff's expert witness report, which shows photographs of a men's restroom and a women's restroom. (ECF No. 12-1 at 65.) During the time since Plaintiff filed this lawsuit, the Restaurant has converted each restroom into a unisex restroom. (ECF No. 22 at 9–10.) Plaintiff failed to amend his allegations in his FAC to include the second bathroom, therefore, Plaintiff's reference to two measurement calculations is improper and only one restroom, the one which was the men's restroom, is at issue. (ECF No. 22 at 9–10.) Therefore, Defendants argue that Plaintiff's allegations relate only to the previous men's bathroom, and Plaintiff cannot include an additional allegation to the second bathroom (previous women's restroom) in its motion for summary judgment. (ECF No. 22 at 10.)

The Court finds that the bathroom at issue is the bathroom that was previously the men's restroom. According to Blackseth, who visited the Restaurant and inspected the alleged

violations following Plaintiff's filing of the FAC, "[t]he toilet tissue dispenser is 7"–9" in front of the toilet." (ECF No. 17-6 at 11.) Blackseth's expert report determined that this restroom is compliant. (*See* ECF No. 17-6 at 11.) Plaintiff has not offered any evidence to contradict this finding, and accordingly, there is no genuine dispute of material fact.

Second, Defendants argue that the ADAAG does not "prohibit the use of a dispenser that houses two toilet paper rolls side by side." (ECF No. 19 at 6.) The Court agrees. The ADAAG requires the centerline of the toilet paper roll be a minimum of 7 inches and a maximum of 9 inches from the water closet. The toilet tissue dispenser in the restroom complies with that requirement because it is approximately "8 inches from the tip of the water closet." (ECF No. 20-2 ¶ 12.) The Court could not find, and Plaintiff has not cited any, additional requirement under either the ADAAG or the CBC that prohibits the use of horizontal toilet tissue dispensers in restrooms where at least one of the toilet paper rolls is in compliance. Therefore, the Court finds there is no dispute of material fact that the toilet tissue dispenser at issue does not violate the ADAAG or the CBC. Accordingly, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for partial summary judgment on the toilet tissue dispenser claim.

*iv.     Pipes Beneath the Lavatory*

Defendants and Plaintiff move for summary judgment on whether the pipes beneath the lavatory are properly insulated and covered. (ECF No. 17-1 at 6; ECF No. 18-1 at 9–10.) Defendants argue the pipes are insulated properly in compliance with all applicable accessibility regulations. (ECF No. 17-1 at 6.) Plaintiff argues the pipes are improperly and incompletely wrapped, which creates a risk of abrasion and burns for Plaintiff when he uses the lavatory while in his wheelchair. (ECF No. 18-1 at 9–10.)

The ADAAG provides, in relevant part, "[w]ater supply and drain pipes under lavatories and sinks shall by insulated or otherwise configured to protect against contact." ADAAG § 606.5 (2010). The CBC requires that "[h]ot water and drainpipes accessible under lavatories shall be insulated or otherwise covered." CBC § 1115B.4.3.4. If a party "provide[s] evidence that hot water lines under the sink are insulated or otherwise configured to protect against contact, [the

14

party] ha[s] demonstrated that they have complied with the ADA Standards." *Vogel v. OM ABS, Inc.*, No. CV 13-01797 RSWL (JEMx), 2014 WL 4054257, at *5 (C.D. Cal. Aug. 12, 2014); *see also Kohler v. In-N-Out Burgers*, No. CV 12-5054-GHK (JEMx), 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013) (holding the pipes must be "susceptible to [come into] contact with patrons" to prevail under ADAAG section 606.5).

Defendants argue that the lavatory drain and supply pipes are insulated properly because they protect against contact in compliance with all applicable accessibility laws. (ECF No. 19 at 7.) Defendants argue the compliance is supported by Blackseth's expert report, measurements, and assessments where he concluded that "[n]o further action [was] required" since the lavatory drain and supply pipes were insulated properly. (ECF No. 22 at 10.) Without offering any further explanation, Plaintiff asserts the pipes were "improperly and incompletely wrapped." (ECF No. 18-1 at 9–10; ECF No. 20-2 ¶ 11.) Pipes located under lavatories must be insulated and "configured to prevent contact with patrons." *Kohler*, 2013 WL 5315443, at *7. The party alleging a violation of this rule must demonstrate "that the hot water lines are accessible." *Vogel*, 2014 WL 4054257, at *5; *see also Wilson v. Norbreck, LLC*, No. CIVS040690DFLJFM, 2005 WL 3439714, at *5 (E.D. Cal. Dec. 14, 2005) (denying plaintiff's motion for summary judgment because he had provided no evidence that the hot water lines were accessible). Here, Plaintiff has not produced any evidence that the hot water pipes under the lavatory are "not configured to prevent contact" or that they are "susceptible to contact with patrons." *Kohler*, 2013 WL 5315443, at *7. Instead, Plaintiff states that the pipes are improperly and incompletely wrapped, but "fails to offer any explanation as to why or how they are noncompliant." *Rocca v. Den 109 LP*, No. 2:14-CV-00538-ODW-MRW, 2015 WL 2085488, at *6 (C.D. Cal. May 5, 2015) (finding the plaintiff failed to "satisfy his burden of persuading the court that the pipes were improperly or incompletely wrapped").

Defendants, on the other hand, have introduced evidence in the form of pictures and an expert report, that the pipes beneath the lavatory are properly insulated, are "configured to prevent contact[,] and are not accessible under the sink." *Vogel*, 2014 WL 4054257, at *4. Plaintiff has failed to present evidence that the pipes were susceptible to coming into contact with

15

patrons, nor has Plaintiff provided any explanation for why or how the pipes are noncompliant. Thus, the Court finds Plaintiff has not shown that a genuine dispute of material fact exists. Accordingly, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for partial summary judgment on the lavatory pipes issue.

### C. Remaining State Law Claims

Plaintiff's remaining claims include an alleged violation of California Health and Safety Code section 19955 and a claim for statutory damages under the Unruh Civil Rights Act ("Unruh Act"). (ECF No. 18-1 at 10–11.) Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (ECF No. 17-1 at 8.) Plaintiff argues the Court should maintain supplemental jurisdiction over Plaintiff's state law claims because "there remains a triable issue of fact as to whether Defendants violated the ADA." (ECF No. 20 at 8.)

*i. Supplemental Jurisdiction*

Defendants argue this Court should decline supplemental jurisdiction over Plaintiff's state law claims because the factors in deciding whether to dismiss supplemental state claims "do not weigh in favor of [doing so]." (ECF No. 17-1 at 8); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988) (stating the factors include "economy, convenience, fairness, and comity"). The Court disagrees as it has "supplemental jurisdiction 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Vogel v. Winchell's Donut Houses Operating Co., LP*, 252 F. Supp. 3d 977, 985 (C.D. Cal. 2017) (quoting 28 U.S.C. § 1367(a)). Here, the ADA claims and the state law claims "share a common nucleus of operative fact and are part of the same case or controversy" because "[o]ther than the availability of statutory damages under state law, the state and federal claims are identical." *Id.*; *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1194 (E.D. Cal. 2015). The burdens of proof and standards of liability are the same, and the Unruh Act "specifically provides that a violation under the ADA also constitutes a violation of the Unruh Act." *Moore*, 85 F. Supp. 3d at 1194 (citing Cal. Civ. Code § 51(f)). Thus, the Court finds that the "state and federal claims are so intertwined" that it would "best advance economy, convenience, fairness,

///

and comity" to exercise supplemental jurisdiction over Plaintiff's state law claims.  *Id.*  Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

### ii. *California Health and Safety Code*

California Health and Safety Code section 19955 requires that "California public accommodations and facilities adhere to the state architect's regulations . . . to ensure all public accommodations are accessible to persons with disabilities."  *Moore*, 85 F. Supp. 3d at 1183 (citing Cal. Health & Safety Code § 19955).  Plaintiff argues he is entitled to summary judgment because "[t]o prevail on a claim for a violation of [section 19955], a plaintiff must prove that Defendants violated the ADA or the CBC, or that Defendants' property denied Plaintiff access in ways that relates to his disability."  (ECF No. 18-1 at 10.)  Defendants argue that Plaintiff is unable to state a claim for monetary damages under this statute because section 19955 "does not itself allow for monetary damages."  (ECF No. 19 at 8.)

Because the Court grants summary judgment in Defendants' favor on the toilet tissue dispenser and the lavatory drain and supply pipes claims, the Court also enters judgment in Defendants' favor on the state law claims alleging the same violations.  Factual disputes preclude summary judgment as to the remaining barriers, so the Court DENIES both parties' motions for summary judgment under Health and Safety Code § 19955 for the remaining alleged barriers.

### iii. *Unruh Act*

The Unruh Act "broadly outlaws arbitrary discrimination in public accommodations, including discrimination based on disability."  *Moore*, 85 F. Supp. 3d at 1183 (citing Cal. Civ. Code § 51(b); *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012)).  The Unruh Act "allows for monetary damages including automatic minimum penalties in the amount of $4,000 per occurrence."  *Id.* (citing Cal. Civ. Code § 52).  Plaintiff argues that summary judgment is proper because Defendants' ADA violations establish violations under the Unruh Act.  (ECF No. 18-1 at 10–11.)  As such, Plaintiff seeks $8,000 in statutory damages based on his two visits to the Restaurant.  (ECF No. 18-1 at 11.)  Defendants argue that damages are unavailable because Plaintiff cannot establish any violations under the ADA.  (ECF No. 19 at 8.)

///

17

Because the Court grants summary judgment in Defendants' favor on the toilet tissue dispenser and the lavatory drain and supply pipes claims, the Court also enters judgment in Defendants' favor on the state law claims alleging the same violation. Factual disputes preclude summary judgment as to the remaining barriers, so the Court DENIES both parties' motions for summary judgment under the Unruh Act for the remaining alleged barriers. *See Johnson v. Wayside Property, Inc.*, 41 F. Supp. 3d 973, 981 (E.D. Cal. 2014) (denying summary judgment due to existing factual questions and therefore, also declining to award statutory damages under the Unruh Act as "premature").

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' motion for summary judgment and DENIES Plaintiff's motion for partial summary judgment. In summary, the Court hereby:

1. DENIES Plaintiff and Defendants' motions for summary judgment on the disabled parking spot slope claim.
2. DENIES Plaintiff and Defendants' motions for summary judgment on the access aisle slope claim.
3. DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendants' motion for summary judgment on the toilet tissue dispenser claim.
4. DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendants' motion for summary judgment on the lavatory drain and supply pipes claim.
5. DENIES Plaintiff and Defendants' motions for summary judgment for statutory damages under California Health and Safety section 19955.
6. DENIES Plaintiff and Defendants' motions for summary judgment for statutory damages under the Unruh Act.

Dated: July 11, 2019

The parties are hereby ordered to file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

_____
Troy L. Nunley
United States District Judge